# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED SPECIALTY INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 3:25-cv-00713** |
| | ) | **Judge Aleta A. Trauger** |
| **MJC EXPRESS INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |
| **KYESHA JACKSON** *et al.*, | ) ) ) | |
| **Intervenor-Plaintiffs.** | ) | |

## MEMORANDUM

Before the court is the Motion for Default Judgment filed by plaintiff United Specialty Insurance Company ("USIC") (Doc. No. 24), supported by a Memorandum of Law (Doc. No. 25), seeking a default judgment against defendant MJC Express, Inc. ("MJC"). MJC, despite having been duly served, has neither entered an appearance in this case nor responded to the Motion for Default Judgment. Also before the court is the Intervenor Complaint filed by intervenor-plaintiffs Kyesha Jackson, *et al.* (Doc. No. 31.) Having been directed to do so by the court, the intervenor-plaintiffs filed a Memorandum of Law Regarding Their Theory of Coverage (Doc. No. 31-1) in support of the relief they seek in the Intervenor Complaint. USIC filed a Response in Opposition to Intervenor-Plaintiffs' Memorandum of Law Regarding Their Theory of Coverage (Doc. No. 33), and the intervenor-plaintiffs filed a Reply in further support of their theory (Doc. No. 36).

As set forth herein, the plaintiff and the intervenor-plaintiffs are both at least partially correct. The court will grant USIC's Motion for Default Judgment against MJC and issue judicial declarations to the effect that USIC has no obligation under the insurance policy it issued to MJC either to indemnify or defend MJC in the underlying lawsuit brought by the intervenor-plaintiffs against MJC. At the same time, however, the court will also *sua sponte* grant summary judgment for the intervenor-plaintiffs on their theory of recovery against USIC. Accordingly, the court will issue a judicial declaration to the effect that the MCS-90 endorsement attached to the policy governs USIC's obligation to satisfy any unsatisfied final judgment entered against MJC in the underlying lawsuit. To be clear, this is not a ruling on the merits of the plaintiffs' claim against MJC in the underlying lawsuit.

## I.  BACKGROUND

In July 2024, the intervenor-plaintiffs, who are the children of Kathy D. Lena Black, deceased, brought a survival action in this court, seeking damages arising from the death of Kathy Black in a vehicle crash on Interstate 24 West in Robertson County, Tennessee that took place on June 13, 2024 (the "crash"). *See* Compl., *Jackson v. Ortiz*, No. 3:24-cv-00900 (M.D. Tenn. July 24, 2024), ECF No. 1.[1] As set forth in the operative pleading in that case (the "underlying case"), Black was driving on I-24 when her vehicle was struck by a tractor-trailer rig recklessly operated by Eddy Ortiz, forcing Black off the highway and killing her in the crash. Fourth Am. Compl. ("FAC") ¶¶ 10–11, ECF No. 69. The plaintiffs allege that defendant motor carrier Ponce's Xpress, Inc. ("Ponce's") was an authorized interstate motor carrier, issued U.S. DOT number 2818466, and that the 2019 Freightliner tractor that Ortiz was driving at the time of the crash was operating

---

[1] Subsequent initial references to documents filed in the underlying case will be formatted by the document title, page or paragraph number as relevant, and the ECF No. of the filing in the underlying case. For example: Compl. ¶ 12, ECF No. 1.

under U.S. DOT number 2818466. *Id.* ¶ 24. The plaintiffs also allege that defendant MJC was an authorized interstate motor carrier, issued U.S. DOT number 2429682, and was at the time of the crash the registered owner of the 2019 Freightliner tractor and the 2019 Wabash trailer operated by Eddy Ortiz at the time of the crash. *Id.* ¶ 25. The plaintiffs allege that Ortiz was an actual or statutory employee of both Ponce's and MJC and acting within the scope of his employment. *Id.* ¶¶ 26–28. The plaintiffs bring claims against Ortiz for negligent and/or reckless driving and negligence *per se*, and they assert that Ponce's and MJC are vicariously liable for the damages caused by Ortiz in the crash. They also assert negligent hiring, retention, and supervision claims directly against Ponce's and MJC. *See generally id.* at 14–19.

Although the defendants answered the FAC, denying many of the factual allegations and liability, counsel for both defendants moved, and were granted leave, to withdraw shortly after filing their Answers. New counsel for Ponce's and Ortiz subsequently entered an appearance, but MJC has remained unrepresented since June 30, 2025. In September 2025, the plaintiffs filed a Motion for Entry of Default against MJC, supported by the Declaration of plaintiffs' counsel, Hamilton Jordan. Motion, ECF No. 89; Decl., ECF No. 89-1. The Clerk of Court granted that motion and entered default against MJC on November 4, 2025 pursuant to Federal Rule of Civil Procedure 55(a). Text Only Order, ECF No. 101. The plaintiffs' Motion for Default Judgment Against Defendant MJC Express, Inc. remains pending and has been referred to the Magistrate Judge for resolution. Motion, ECF No. 102; Order, ECF No. 119.

Meanwhile, on June 26, 2025, shortly after counsel for MJC withdrew from representing MJC in the underlying case, USIC initiated this case by filing its Complaint for Declaratory Judgment ("Complaint") (Doc. No. 1) against MJC, seeking a declaration that it has no contractual

responsibility either to defend MJC in the underlying case or to indemnify it against any liability assessed against MJC in that case. (*See* Doc. No. 1 at 4.)

USIC specifically alleges in the Complaint that it issued a commercial insurance policy to MJC, Policy Number KQK5657388, effective August 7, 2023 to August 7, 2024 (the "Policy") (*see* Doc. No. 1-2); that four vehicles are listed on the original Schedule of Automobiles forming part of the Policy Declarations, including a 2019 Freightliner Tractor with VIN 3AKJHHFG7KSLM4729 (the "Subject Vehicle") (the vehicle Ortiz was driving in the crash); that USIC issued a Change Endorsement to the Policy, effective November 13, 2023, that deleted the Subject Vehicle from the Schedule of Automobiles covered by the Policy and deleted the Policy's coverage for the Subject Vehicle; and that the Subject Vehicle was sold, pursuant to a Bill of Sale in USIC's possession, to PPP Transportation Express, Inc. on November 8, 2023. (Doc. No. 1 ¶¶ 12–15; Doc. No. 1-4, Bill of Sale.)[2]

---

[2] Notably, the Bill of Sale identifies the model year of the Freightliner with VIN 3AKJHHFG7KSLM4729 as 2020, rather than 2019, and the required Odometer Disclosure Statement on the form is left blank. (Doc. No. 1-4.) It also expressly states, in bold, capitalized letters: "**OWNERSHIP STATUS FOR THE ABOVE DESCRIBED MOTOR VEHICLE . . . WILL NOT CHANGE UNTIL THE PURCHASER APPLIES FOR AND IS ISSUED A CERTIFICATE OF TITLE.**" (*Id.*)

Moreover, according to a Declaration submitted by counsel for the intervenor-plaintiffs, Tennessee Highway Patrol Sergeant John-Mark Tarr testified under oath that the owner of the tractor and the trailer involved in the crash was identified as MJC Express at the time of the crash; the Tennessee Department of Safety and Homeland Security Liability Release Report dated June 13, 2024 identified MJC Express as the registered owner of the Subject Vehicle at the time of the crash; the Tennessee Highway Patrol Commercial Vehicle Post-Crash Investigation Report dated September 11, 2024 identified MJC Express as the registered owner of the Subject Vehicle at the time of the crash; and a Georgia Department of Public Safety Driver/Vehicle Examination Report dated June 12, 2024 identified the owner of the 2019 Freightliner tractor, VIN 3AKJHHFG7KSLM4729, being driven by Eddy Ortiz that day, as MJC Express. (Doc. No. 26-2 ¶¶ 2–4, 6 and attached exhibits.)

In other words, the ownership of the Subject Vehicle is obviously a disputed fact. As set forth herein, however, that dispute is not material.

USIC contends that, "[b]ecause MJC sold the Subject Vehicle and subsequently caused it to be deleted from the Policy prior to the [crash], USIC . . . is not contractually obligated to provide insurance coverage for MJC for any damages awarded against it and is not contractually required to provide MJC with a defense to Plaintiffs' claims in the Underlying Lawsuit." (*Id.* ¶ 17.) It seeks judicial declarations under 28 U.S.C. §§ 2201 and 2202 to that effect: "that USIC is not obligated to provide a defense to MJC in the Underlying Lawsuit due to the Subject Vehicle being sold by MJC and subsequently deleted from Policy coverages" and "that USIC is not obligated to indemnify MJC for any judgment, settlement, or other damages related to the Underlying Lawsuit due to the Subject Vehicle being sold by MJC and subsequently deleted from Policy coverages." (Doc. No. 1 at 4.) And, indeed, the Policy expressly provides that it provides coverage only for "covered 'autos'" (Policy, Doc. No. 1-2 at 8), and the Subject Vehicle was no longer a "covered automobile" at the time of the crash (*see* amended Schedule of Automobiles, effective 11/13/2023, Doc. No. 1-3 at 2). Based on MJC's failure to enter an appearance or defend itself in this lawsuit, USIC now seeks a default judgment against it. (Doc. No. 24.)

Shortly after USIC filed its Complaint, the intervenor-plaintiffs sought and were denied leave to intervene in this case. (Doc. Nos. 10, 14.) They filed a Renewed Motion to Intervene, a supporting Memorandum, and the Declaration of counsel in March 2026, arguing essentially that the question of whether MJC still owned the Subject Vehicle at the time of the crash was a disputed fact. (Doc. Nos. 26, 26-1, 26-2.) Their Proposed Limited Pleading in Opposition to Default Declaratory Relief argued the same. (Doc. No. 27.) The court initially denied the Renewed Motion to Intervene as well. (Doc. No. 29.)

On April 16, 2026, however, the court held a telephone conference in the underlying case in which all parties *except* MJC participated and of which USIC apparently did not receive notice,

having withdrawn from providing a defense for MJC in the underlying case. As set forth in the Joint Motion for Telephonic Status Conference filed in the underlying case, the plaintiffs have reached a tentative settlement with defendants Ortiz and Ponce's, but the settlement does not resolve the plaintiffs' claims against MJC, which the plaintiffs intend to continue to pursue. Joint Motion ¶¶ 1–2, ECF No. 118. As the court noted in the Order entered in this case on April 20, 2026, "[w]hat emerged from the conversation concerning a settlement between all parties but MJC Express, Inc. were new or clarified arguments by plaintiffs' counsel as to how the United Specialty Insurance policy at issue in this case provides coverage for the fatal collision on June 13, 2024, despite the fact that the truck involved had been removed from the policy." (Doc. No. 30 at 1.) In light of this new argument, the court vacated the Order denying the intervenor-plaintiffs' Renewed Motion to Intervene and issued the new Order granting that motion. (*Id.*) The court also directed the parties to brief the intervenor-plaintiffs' new theory of recovery and set a schedule for doing so.

The intervenor-plaintiffs' new theory is this: that the MCS-90 endorsement issued by USIC to MJC when it issued the Policy obligates USIC to satisfy any final judgment entered against MJC in the underlying case, and the fact that the Change Endorsement removed the Subject Vehicle from the Policy does not change that result, because, by operation of law, the MCS-90 endorsement operates independently of the Policy's coverage terms. (*See* Doc. No. 31-1 at 1, 3.)

The full title of the MCS-90 endorsement appended to the Policy is "Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980." (Policy, Doc. No. 1-2 at 57.) The MCS-90 endorsement was issued to MJC effective August 7, 2023; it is "primary" and subject to a limitation of $1,000,000 per accident. (*Id.*) In relevant part, the endorsement further states as follows:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA). In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, *any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy* and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . It is understood and agreed that *no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described*, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, *all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company*. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(*Id.* at 58 (emphasis added).)

Based on this language and the underlying federal law, the intervenor-plaintiffs seek a judicial declaration that (1) the MCS-90 endorsement governs USIC's "obligations with respect to any unsatisfied final judgment" entered against MJC in the underlying case; (2) the Change Endorsement deleting the Subject Vehicle from coverage does not relieve USIC of its obligations under the MCS-90 endorsement; and (3) USIC cannot rely on any Policy limitation to avoid its obligations under the MCS-90 endorsement.

USIC objects to the intervenor-plaintiffs' "attempt to recast this case as presenting 'a narrow question of federal law'" concerning the MCS-90 endorsement. (Doc. No. 33 at 2 (quoting Doc. No. 31-1 at 1).) From USIC's perspective, this case, prior to any intervention, is simply a declaratory judgment proceeding between an insurer and an insured to determine the insurer's

coverage obligations under an insurance policy. (*Id.*) It also contends that the intervenor-plaintiffs' position fails for three reasons. First, according to USIC, the intervenor-plaintiffs' Memorandum mischaracterizes USIC's position, which is that there is no consideration to support coverage for the Subject Vehicle, since it returned the policy premium and deleted the Subject Vehicle from the schedule of covered automobiles and MJC sold the vehicle, meaning that there is an "absence of coverage" and not merely "an exclusion from coverage." (*Id.*) Second, USIC argues that the MCS-90 endorsement only applies once there is a final judgment against the insured and that, without such a final judgment, the intervenor-plaintiffs have no basis for invoking the endorsement, and their request for declarations is premature. And third, even if the court found that the endorsement applies as a matter of law, there is a material factual dispute as to whether MJC owned the Subject Vehicle at the time of the June 13, 2024 crash. (*Id.* at 3.)

The intervenor-plaintiffs point out in their Reply that (1) the MCS-90 endorsement applies "regardless of whether or not each motor vehicle is specifically described in the policy" and precisely because the "underlying policy would not pay" (Doc. No. 36 at 2, quoting Policy, Doc. No. 1-2 at 5); (2) final judgment is imminent in the underlying case, which means that the plaintiff-intervenors' need to invoke the MCS-90 endorsement is not merely speculative; and (3) the ownership of the Subject Vehicle, though disputed, is not relevant to whether the MCS-90 endorsement applies.

## II.     LEGAL STANDARDS

### A.     Motion for Default Judgment

An entry of default and a default judgment are two distinct events under the Federal Rules of Civil Procedure. To obtain entry of a default *judgment*, the moving party must first request that the clerk of court enter a default under Rule 55(a). *Ramada Franchise Sys., Inc. v. Baroda Enters., LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004). Once the clerk enters default, the moving party may

seek a judgment of default against a defendant who fails to plead or otherwise defend against an action. Fed. R. Civ. P. 55(b).

The entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)). Thus, in assessing a motion for default judgment, the court accepts as true all well pleaded allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The court then determines whether, based on those facts, the plaintiff has established that it is entitled to a default judgment. *Fifth Third Bank v. Canfield*, No. 3:14-CV-00300-CRS, 2014 WL 3853464, at *2 (W.D. Ky. Aug. 5, 2014) (citing *PNC Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13-CV-40-ORL, 2014 WL 2574040, at *5 (M.D. Fla. June 9, 2014)). The allegations are sufficient "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"[T]he decision to grant a default judgment is within the Court's discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citations omitted). The Sixth Circuit has identified factors to be considered in the exercise of that discretion, including:

> 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). The court must also be sure it has jurisdiction over the defaulted defendant. *See, e.g.*, *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010)

("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment").

No damages hearing is required here, because USIC does not seek damages. *See* Fed. R. Civ. P. 55(b)(2).

### B. Entry of Summary Judgment *Sua Sponte*

"A district court may, in the exercise of its discretion, grant summary judgment *sua sponte* in "certain limited circumstances," so long as the losing party is "afforded notice and reasonable opportunity to respond to all the issues to be considered by the court." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 499 (6th Cir. 2011) (quoting *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). Similarly, Federal Rule of Civil Procedure 56(f) provides that, "[a]fter giving notice and a reasonable time to respond," a district court may enter summary judgment "for a nonmovant." *Bailey v. City of Howell*, 643 F. App'x 589, 600 (6th Cir. 2016) (quoting Fed. R. Civ. P. 56(f)).

## III. DISCUSSION

### A. USIC's Motion for Default Judgment

#### 1. Personal Jurisdiction Over MJC

The Complaint does not specifically assert that the court may exercise personal jurisdiction over MJC, but it asserts that the court has diversity jurisdiction and that venue in this court is appropriate because the accident that is the subject of the underlying case occurred within this district, and the underlying case, in which MJC is a named defendant over whom the court clearly has personal jurisdiction, is pending in this court. The court must nonetheless determine whether it may exercise personal jurisdiction over MJC.

The Tennessee long-arm jurisdiction statute provides that personal jurisdiction extends to nonresidents as to

any action or claim for relief arising from:

(1) The transaction of any business within this state;

(2) Any tortious act or omission within this state;

[and]

(6) Any basis not inconsistent with the constitution of this state or of the United States[.]

Tenn. Code Ann. § 20-2-214. In other words, personal jurisdiction under Tennessee law extends to the limits of due process. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645–46 (Tenn. 2009). The question here is whether the exercise of personal jurisdiction over MJC, a Florida corporation with its principal place of business in Florida (*see* Compl. ¶ 2), comports with due process.

Although courts around the country presented with a similar fact pattern have reached different conclusions, this court finds that the scope of its personal jurisdiction over MJC is coextensive with its jurisdiction over it in the underlying case. *Accord, e.g.*, *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (finding that it had personal jurisdiction over the nonresident defendant in insurance company's declaratory judgment action where the injury and insurance coverage question arose from alleged breach of contract by the defendant in the forum state, because the defendant "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," and 'the litigation results from alleged injuries that arise out of or relate to those activities" (citations omitted)); *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 666 (S.D. Ohio 2011) (denying motion to dismiss for lack of personal jurisdiction by nonresident defendant in declaratory judgment action by insurance company seeking declaration as to coverage obligation and observing that, "if an insured either transacts business in a state other than the one in which he or she resides, or tortiously injures

someone in such a state, it is reasonably foreseeable that insurance coverage issues may arise from that conduct"); *Mass. Bay Ins. Co. v. Portland Water Dist.*, No. CIV. 99-487-M, 2000 WL 1499493, at \*3–4 (D.N.H. May 10, 2000) (finding that the court had personal jurisdiction over the defendant in a declaratory judgment action by insurance company seeking a declaration that it was not obligated to indemnify defendant for damages that might be awarded against it in underlying state court tort action, because the case arose out of the defendant's tortious activities in the forum).

The court has personal jurisdiction over MJC in the underlying case, because it is alleged to have engaged in a tortious act within the state. *Accord, e.g.*, *Burrell v. Duhon*, No. 5:18-CV-141-TBR-LLK, 2019 WL 2495488, at \*7 (W.D. Ky. June 14, 2019) (finding that the court had personal jurisdiction over out-of-state defendant whose employee was alleged to have caused injuries in the state while acting as the agent of his employer); *see also Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."). The court has personal jurisdiction over MJC in this case as well.

### 2.   *Whether to Exercise Jurisdiction*

Notably, "[a] clerk's entry of default is not a guarantee that a court's entry of default judgment is going to follow in a suit arising under the Declaratory Judgment Act." *Allstate Ins. Co. v. Cantrell Funeral Home Inc.*, No. 19-CV-12263, 2020 WL 4915558, at \*3 (E.D. Mich. Aug. 21, 2020). The Declaratory Judgment Act states that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. It does not provide an independent basis for jurisdiction, rather; it provides courts with discretion to fashion a remedy when federal

jurisdiction already exists. *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).

Thus, when a party seeks relief under the Declaratory Judgment Act in a case over which this court has diversity jurisdiction, the court must determine whether it *should* exercise its jurisdiction under five factors identified by the Sixth Circuit in *Grand Trunk Western Railway Company v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984):

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk*, 746 F.2d at 326 (internal quotation marks and citations omitted).

USIC did not address the *Grand Trunk* factors in its Motion for Default Judgment, but the court will consider *sua sponte* the relevant factors for exercising jurisdiction under the Declaratory Judgment Act.

As to the first two factors, a declaration that there is no duty to defend or indemnify under the insurance contract would serve the useful purpose of settling the dispute, at least in part. As to the third, nothing in the record suggests "procedural fencing" or a "race for *res judicata*." When there is no evidence of procedural fencing, the Sixth Circuit "often find[s] that the factor is neutral and does not point toward denying jurisdiction." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019) (internal quotation marks and citations omitted).

The Sixth Circuit has broken the fourth factor into three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;

> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 799 (6th Cir. 2022) (citation omitted). "The first subfactor 'focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action.'" *Id.* (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008)). The Sixth Circuit recognizes that, "[w]hen parties seek a declaration of the scope of insurance coverage," "such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id.* On the other hand, this subfactor would "point[] against exercising jurisdiction when 'resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court.'" *Id.* (quoting *Flowers*, 513 F.3d at 560). Here, there is no underlying parallel state court case, and the court is not aware of any underlying comity issues implicated by USIC's claim for relief.

Likewise, regarding the second subfactor, USIC's Complaint does not raise "novel questions of state law." *Id.* (quoting *Flowers*, 513 F.3d at 560). Rather, the issue is one of relatively straightforward contract interpretation. *See id.* ("If 'the state law is clear and . . . the state court is not considering the issues,' this subfactor has less force." (quoting *Flowers*, 513 F.3d at 560)). Nonetheless, as for the third sub-factor, the Sixth Circuit recognizes that, while "it is not always improper for federal courts to consider questions of insurance contract interpretation," "the interpretation of insurance contracts is closely entwined with state public policy." *Id.* at 800 (citations omitted). "This is especially true where a case is 'brought pursuant to the federal courts' diversity jurisdiction and neither federal common law nor federal statutory law appl[ies] to the substantive issues of the case.'" *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815–16 (6th Cir. 2004)). Because federal law does not apply to USIC's claims, this final

subfactor weighs against the exercise of jurisdiction.[3] Overall, however, taking all three subfactors into consideration, the court finds that factor four is neutral.

Finally, the fifth factor asks whether a better or more effective alternative remedy exists. The Sixth Circuit has held that an "alternative remedy is 'better' than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *Cole's Place*, 936 F.3d at 401 (citing *Bituminous*, 373 F.3d at 816). Here, the laws of both Tennessee and Florida provide for declaratory relief. *See* Tenn. Code Ann. § 29-14-102; *Mandarin Lakes Cmty. Ass'n v. Mandarin Lakes Neighborhood Homeowners Ass'n*, 322 So. 3d 1196, 1199 (Fla. Dist. Ct. App. 2021) (discussing the availability of declaratory judgments in Florida). This factor therefore "undermines the argument for jurisdiction" over this declaratory judgment action. *Cole's Place*, 936 F.3d at 401.

The "relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case" in a Declaratory Judgment Act litigation, and "[t]he essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* at 402 (citations omitted). In this case, the first and second *Grand Trunk* factors weigh in favor of jurisdiction; factors three and four are neutral; and factor five arguably weighs against jurisdiction. Considering these factors together, and particularly in light of the underlying case also in this court, the court will exercise jurisdiction over this case under the Declaratory Judgment Act. *Accord id.*

---

[3] Federal law, however, does govern the interpretation of the MCS-90 endorsement, as discussed below, in connection with the intervenor-plaintiffs' request for declaratory relief.

### 3. The Merits of USIC's Position

USIC filed its Complaint on June 26, 2025, pursuant to 28 U.S.C. §§ 2201–2202, seeking a judicial declaration as to the rights and duties of USIC and MJC under the terms of the Policy. (Doc. No. 1.) The United States Postal Service delivered the Summons and Complaint to MJC's registered agent's address on August 12, 2025 and obtained a signature of "1728 MJC," as set forth on the return of service. (Doc. No. 9.) After MJC failed to answer or otherwise respond to the Complaint, USIC filed its initial Motion for Entry of Default on September 24, 2025. (Doc. No. 17.) The Clerk of Court denied the initial motion without prejudice, on the basis that USIC had failed to establish effective service of process.

USIC thereafter engaged a private investigator to locate and personally serve the Summons and Complaint on MJC's registered agent for service of process. (*See* Doc. No. 20; *see also* Doc. No. 22, Carpenter Decl. ¶ 6.) USIC renewed its motion for entry of default, which the Clerk granted on March 16, 2026. (Doc. Nos. 21, 23.) To date, MJC has not answered, entered an appearance, or contacted counsel for USIC. (Carpenter Decl. ¶ 7.)

After the Clerk entered default, USIC moved the court for default judgment under Rule 55(b)(2). (Doc. No. 24; *see also* Mem. Supp. M. Default Judgment, Doc. No. 25.) The court has reviewed the Complaint and its attachments, which include the Policy and Change Endorsement, as well as a Bill of Sale. (Doc. Nos. 1, 1-2, 1-3, 1-4.) As set forth in the Complaint and attachments and discussed above, USIC issued the commercial lines Policy to MJC with effective dates of August 7, 2023 to August 7, 2024, and the original Schedule of Automobiles forming part of the Policy Declarations identified four vehicles, including the Subject Vehicle, a 2019 Freightliner Tractor with VIN 3AKJHHFG7KSLM4729. Effective November 13, 2023, USIC issued Endorsement No. 1 to the Policy, which is a Change Endorsement deleting the Subject Vehicle from coverage. The Change Endorsement also reflects that MJC was due a return of a portion of

the premium. Based on these allegations, USIC seeks declarations that it has no duty under the Policy either to defend or indemnify MJC in the underlying suit.

In a diversity action, a district court applies the choice-of-law rules of the state in which it sits. *Pedicini v. Life Ins. Co.*, 682 F.3d 522, 526 (6th Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Tennessee choice-of-law rules, Florida law governs coverage of an insured under an insurance policy issued in Florida to a Florida business. *Accord Stakem v. Randolph*, 228 F. App'x 600 (6th Cir. 2007).

Under Florida law, "[t]he duty to indemnify is a concept distinct from a duty to defend. The duty to defend is broader than the duty to pay." *Allstate Ins. Co. v. RJT Enters.*, 692 So. 2d 142, 144 (Fla. 1997). The duty to defend "is determined solely by the allegations of the complaint," and the insurer must defend "if those allegations identify facts within the scope of the policy's coverage." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1149 (11th Cir. 2019) (quoting *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105, 1107 (11th Cir. 2017). This means that the insurer must defend, "even if the allegations in the complaint are factually incorrect or meritless," and "[a]ny doubts regarding the duty to defend must be resolved in favor of the insured." *Id.* at 1148–49 (quoting *Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006)).

At the same time, whether a claim, as alleged in the complaint, falls within the scope of an insurance policy depends entirely on the "insurance contract and policy." *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1355 (S.D. Fla. 2017). If "there is no contractual duty to defend in the parties' contract[,] then there is no duty to defend." *RJT Enters.*, 692 So. 2d at144 (Fla. 1997); *see also id.* ("We reiterate that, in the absence of an express statutory or contractual duty to defend, there is no such duty."). "In insurance coverage cases under Florida

law, courts look at the insurance policy as a whole and give every provision its full meaning and operative effect." *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). "If that language is unambiguous, it governs." *Id.* If the language is ambiguous, the terms must be "construed against the insurer and in favor of coverage." *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011) (citation omitted).

In this case, the only relevant factual allegations in the FAC in the underlying case are that the Subject Vehicle driven by Eddy Ortiz was owned by MJC. FAC ¶ 25. But MJC's ownership of the Subject Vehicle says nothing about whether it was insured by USIC. In the Schedule of Coverages and Covered Autos, the Policy expressly states that it

> provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto coverage Form next to the name of the coverage.

(Policy, Doc. No. 1-2 at 8.) Under the chart below this language, the Policy states that it provides $1,000,000 in liability coverage. (*Id.*) The Schedule of Automobiles originally included as part of the Policy included the Subject Vehicle. (*Id.* at 10.) The Policy further provides that the insurer will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[4] (*Id.* at 14.) USIC also has "the right and duty to defend any 'insured' against a 'suit' asking for such damages." (*Id.*) The Policy's "terms can be amended or waived only by endorsement issued by [USIC] and made a part of this policy." (*Id.* at 32.)

---

[4] In other words, under the Policy itself, USIC's liability would not necessarily depend on MJC's ownership of a scheduled vehicle; maintenance or use would also be sufficient, so long as the other coverage requirements are met.

As set forth above, USIC issued a policy amendment effective November 12, 2023 that removed the Subject Vehicle from the list of covered vehicles shown on an amended Schedule of Automobiles. (Doc. No. 1-3.) As a result of that change, USIC no longer has a contractual obligation under the Policy either to defend MJC against claims arising from accidents involving the Subject Vehicle or to pay sums MJC is legally required to pay arising from an accident resulting from the use of the Subject Vehicle or to defend MJC against a lawsuit seeking such damages. (Doc. No. 1-2 at 14.)

USIC, that is, is entitled to the declarations it seeks: that it is not contractually obligated to provide a defense to MJC in the underlying case or to indemnify MJC for any judgment, settlement, or other damages awarded in the underlying case. That conclusion, however, does not obviate the intervenor-plaintiffs' theory as to their ability to recover from USIC an unsatisfied judgment rendered against MJC, discussed below.

## B.    The Intervenor-Plaintiffs' Request for Declaratory Relief

As set forth above, the Policy also includes a Form MCS-90 (the "MCS-90 endorsement"), which supplies the basis for the intervenor-plaintiffs' request for intervention and theory of their ability to recover from USIC, despite the fact that the Policy otherwise does not provide coverage. Notably, USIC did not raise any arguments or defenses relating to the applicability of the MCS-90 in its Complaint.[5] The intervenor-plaintiffs seek a declaration regarding the effect of the MCS-

---

[5] USIC clearly knew of the presence of the MCS-90 endorsement in the Policy, and it has litigated the applicability of the endorsement in other contexts. *See, e.g.*, *Russell v. Escobar*, No. 18-00660-BAJ-EWD, 2022 WL 136854, at *5 (M.D. La. Jan. 13, 2022) (granting summary judgment for USIC on the issue of whether the endorsement applied, because the truck at issue was not "engaged in the transportation of property in interstate commerce" at the time of the subject accident); *United Specialty Ins. Co. v. Sweeney*, No. 1:21-CV-244-HAB, 2023 WL 2931405, at *1 (N.D. Ind. Apr. 13, 2023) (entering default judgment in favor of USIC in a declaratory judgment action and issuing declarations that USIC had no duty to indemnify or defend the defendant under the insurance policy at issue and that USIC's duties under the MCS-90

90 endorsement. Applying the *Grand Trunk* factors, the court will, in its discretion, exercise jurisdiction over this request for a declaration as well. While a declaration will not entirely settle the controversy, it will serve a useful purpose in clarifying the legal relations at issue; the intervenor-plaintiffs clearly are not using the remedy for the purpose of procedural fencing or to provide an arena for a race for *res judicata*; the issue raised is purely one of federal law; and, given that the case and the underlying case are both before this court, there is not truly a better or more effective alternative remedy. *Grand Trunk*, 746 F.2d at 326.

In addition, because the parties have argued this issue as if there were a pending motion for summary judgment, because the parties were "afforded notice and reasonable opportunity to respond to all the issues to be considered by the court," *Reynolds-Bey*, 428 F. App'x at 499, and because the issue posed is purely one of federal law, the court will *sua sponte* address the intervenor-plaintiffs' Memorandum of Law Regarding Their Theory of Coverage as a motion for summary judgment under Rule 56(f) and will grant the relief requested.

### 1. The Law Regarding MCS-90 Endorsements

Congress enacted the Motor Carrier Act of 1980 ("MCA"), Pub. L. No. 96-296, 94 Stat. 793, "to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009). One of the purposes of the MCA was to "address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003).

---

endorsement were "limited to payment of a final judgment entered against" one of the defendants in connection with the underlying liability lawsuit against that defendant).

Accordingly, in order for a "motor carrier"—defined as "a person providing motor vehicle transportation for compensation," 49 U.S.C. § 13012(14)—to operate as such, the MCA requires proof of financial responsibility demonstrating that the motor carrier is "adequately insured in order to protect the public from risks created by the carrier['s] operations." *Yeates*, 584 F.3d at 875; *see also* 49 U.S.C. § 31139(b), (f); 49 C.F.R. § 387.7(a). The minimum level of financial responsibility requirements apply only to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce" and motor carriers transporting hazardous materials. 49 C.F.R. § 387.3(a), (b).

> As the Tenth Circuit has explained:

> The MCS-90 endorsement constitutes such proof of requisite financial responsibility under the MCA. *See* 49 U.S.C. § 31139(f)(1)(A); 49 C.F.R. § 387.7(d)(1). Consequently, every liability insurance policy issued to motor carriers of interstate commerce contains the MCS-90 endorsement. *Distrib. Servs.*, 320 F.3d at 489. The MCS-90 endorsement, in pertinent part, provides that the motor carrier's insurer "agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of . . . the [MCA]" whether or not the vehicle involved in the accident is specifically described in the policy. 49 C.F.R. § 387.15; *see also Yeates*, 584 F.3d at 874. The motor vehicles that are subject to the financial responsibility requirements are those vehicles used "for the transportation of property by motor carrier or motor private carrier." 49 U.S.C. § 31139(b).

*Herrod v. Wilshire Ins. Co.*, 499 F. App'x 753, 755–56 (10th Cir. 2012).

In other words, the MCS-90 endorsement imposes "a surety obligation on the motor carrier's insurer," thus providing a "safety net that covers the public in the event other insurance coverage is lacking." *Id.* at 756 (quoting *Yeates*, 584 F.3d at 878). Under *Yeates*, an insurer's obligation to pay a negligence judgment against its insured under an MCS-90 endorsement is

> triggered only when (1) the underlying insurance policy to which the endorsement is attached *does not otherwise provide coverage*, and (2) either no other insurer is available to satisfy the judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient to satisfy the federally-prescribed minimum levels of financial responsibility.

*Yeates*, 585 F.3d at 878 (emphasis added), *quoted in Herrod*, 499 F. App'x at 756.

The case of *Carolina Casualty Insurance Company v. Capital Trucking, Inc.*, which relied on both *Yeates* and *Herrod*, is particularly instructive here. It involved an underlying accident between a motorist and a truck that consisted of a tractor apparently owned by one trucking company and a trailer owned by another trucking company. 523 F. Supp. 3d 661, 667 (S.D.N.Y. 2021). The first trucking company was insured by Carolina Casualty at the time of the accident, but the policy in question covered only vehicles listed on the policy's "Schedule of Covered Autos You Own," and the tractor involved in the accident was not on that list. *Id.* at 670. The court held that "[t]he subject vehicle is not, therefore, a covered vehicle under the Carolina policy, based on a plain reading of the language." *Id.* at 670–71. On that basis, the court granted summary judgment to Carolina Casualty on its claim for declaratory relief that its insurance policy issued to Capital Trucking did not apply to the underlying collision. *Id.* at 672.

At the same time, however, the court also granted summary judgment to the injured motorists on their claim that the MCS-90 endorsement in the policy issued by Carolina Casualty "will obligate Carolina to act as a surety to Capital Trucking in the event that a monetary judgment is entered against it." *Id.* at 678. In reaching that conclusion, the court noted:

> The obligations under the MCS-90 endorsement apply to vehicles that are owned by the insured, as well as vehicles they lease. However, an insurer's obligation under the MCS-90 endorsement only triggers when a member of the public obtains a final judgment against the insured motor carrier for negligence, at which time the insured can compel the insurer for payment of the judgment up to the limit of the endorsement.

*Id.* at 673 (citations omitted). The court also recognized that the fact that the motorists injured in the underlying lawsuit had not yet obtained a monetary judgment "pose[d] a roadblock," but "one that can be easily overcome." *Id.* at 678. That is,

> [t]he significance of the timing of Carolina's motion is simply that its obligations under the MCS-90 have not yet been triggered but may be triggered once a

> judgment is entered, in which case Carolina would act as a surety obliged to Capital Trucking.
>
> Because Capital Trucking failed to meet its federally mandated minimum coverage requirement at the time of the accident, and because Capital Trucking cannot look to its underlying insurance policy or other sources to satisfy a potential judgment, the MCS-90 will obligate Carolina to act as a surety to Capital Trucking in the event that a monetary judgment is entered against it.

*Id.* at 678. The same reasoning applies in this case.

Another case factually similar to this one also bears mention. In *Green v. Royal Indemnity Co.*, the plaintiff's decedent was killed when the rear wheels of a truck trailer broke off and struck the windshield of his vehicle. No. 93Civ4335 (MBM), 1994 WL 267749 (S.D.N.Y. June 15, 1994). The plaintiff obtained a judgment against Georges Truck Rental ("Truck Rental") and George Transport Corp. ("Transport") in an underlying action, and she brought a second action to hold defendant Royal Indemnity responsible for paying the $1,000,000 judgment as the insurer of Truck Rental and Transport. *Id.*

Truck Rental and Transport were owned by the same two individuals. Truck Rental purchased the subject trailer in 1985, and Transport used the trailer in its trucking business. In January 1989, Truck Rental conveyed ownership of the trailer to Transport. Transport was covered by a liability policy issued by Royal effective October 21, 1989 through October 21, 1990. *Id.* The Policy included an MCS-90 endorsement providing $1,000,000 in coverage. *Id.*

Even before that date, however, in June 1989, J.V.L. Express ("JVL") agreed to purchase and took possession of the trailer. A bill of sale was executed on August 30, 1989. *Id.* The accident that killed the plaintiff's decedent took place on October 24, 1989—just after Royal's policy covering Transport went into effect—while an agent for JVL was hauling the trailer on a New York expressway. *Id.* At the time, the trailer's license plates and certificate of title were still

registered in the name of Transport, and the trailer displayed the lettering "George Transport Corp." *Id.*

The plaintiff filed suit against JVL, the JVL driver, and Transport in New York state court alleging, among other things, that Transport had negligently maintained the trailer. *Id.* at *2. Royal was notified of the case but declined to defend Transport, disclaiming coverage under the policy. *Id.* The plaintiff settled with JVL and the driver, and entered into a consent judgment with Transport, pursuant to which Transport stipulated to liability in exchange for the plaintiff's agreement not to pursue Transport's owners' personal assets. *Id.* In other words, there was no litigated finding as to Transport's negligence. At a hearing on damages, judgment was entered against Transport. When it failed to satisfy the judgment, the plaintiff sought to recover it from Royal. *Id.*

Royal contested liability on various grounds, including, as relevant here, that, because the trailer was not scheduled on the list of covered vehicles at the time of the accident, it was not bound by the MCS-90 endorsement. As the court stated, that fact was "of no consequence," because the endorsement "explicitly extends insurance coverage to vehicles 'regardless of whether or not each motor vehicle is specifically described in the policy.'" *Id.*

In addition, the court rejected Royal's argument that it could not be liable because Transport no longer owned the trailer at the time of the collision. Regarding this issue, the court stated:

> the endorsement does not require that the insured, itself, own the vehicle. Rather, the endorsement covers 'motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the [MCA].' Which is to say, the endorsement covers vehicles used by motor carriers certified by the ICC to transport people or property for compensation in interstate commerce, which was how the trailer at issue here was used. . . . Indeed, had the endorsement been intended to apply only to vehicles owned by the insured, it would read "any final judgment recovered against the insured for public liability resulting from the

insured's negligence in the operation, maintenance or use of motor vehicles owned by the insured."

. . . .

[T]he plain language of the MCS–90 endorsement provides broad coverage for members of the public injured by commercial trucks. Simply put, any member of the public who obtains a final judgment against an ICC-certified carrier for injuries resulting from a negligently operated or maintained vehicle subject to the MCA can compel payment of that judgment from the insurer pursuant to the MCS–90 endorsement. In this way, the endorsement ensures that there will be funds available to pay a judgment recovered against a carrier. Further, the endorsement places fiscal responsibility ultimately on that carrier, because the insurer has the right to reimbursement for any claims it pays under the endorsement.

*Id.* at *5–6 (citations omitted). In other words, ownership of the vehicle in question is not necessary or even relevant to the determination of whether an MCS-90 endorsement applies.

### 2.    *The Application of the MCS-90 Endorsement in this Case*

Here, the Clerk of Court has entered a default against MJC in the underlying case, due to its failure to defend. As set forth above, the entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas*, 489 F.3d at 299. Given the entry of default, there is effectively no dispute, for purposes of its liability in the underlying case, that MJC owned the Subject Vehicle operated by driver Eddy Ortiz at the time of the crash, that MJC was Ortiz's actual or statutory employer, and that MJC is vicariously liable for Ortiz's negligence. FAC ¶¶ 25–31, 47–49, ECF No. 69.[6] The MCS-90 endorsement provides that USIC will function as surety for MJC for "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy." (Doc. No. 1-2 at 58.)

---

[6] As set forth in Note 2, *supra*, the intervenor-plaintiffs are now in possession of a substantial amount of evidence indicating that MJC owned the Subject Vehicle at the time of the crash or, in any event, that title had never been transferred.

USIC's arguments to the contrary, like those raised in the cases referenced above, are largely unavailing. First, as to its arguments about lack of consideration and "absence of coverage" as opposed to "exclusion from coverage," there is simply no dispute that MJC is USIC's insured and that the Subject Vehicle was removed from the Policy pursuant to an endorsement. It is precisely under this scenario—when the Subject Vehicle is not covered by the Policy's liability provisions—that the MCS-90 endorsement applies. As in *Green*, the fact that the Subject Vehicle was not expressly covered by the Policy is "of no consequence." *Green*, 1994 WL 267749, at *4.

Similarly, ownership of the Subject Vehicle is simply irrelevant. *Accord id.* at *5–6. The operative question is whether MJC was itself negligent or is vicariously liable for Ortiz's negligence or recklessness and whether the other requirements of the MCS-90 endorsement are met. If MJC wanted to defend against liability on the basis that it was not Ortiz's actual or statutory employer or is otherwise not vicariously liable for his negligence in the underlying case, it could have done so.[7] Application of the MCS-90 endorsement does not depend on MJC's ownership of the Subject Vehicle or its coverage under the Policy.[8]

As for USIC's ripeness argument, as the intervenor-plaintiffs point out, the entry of default served to establish MJC's vicarious liability for Ortiz's negligence, leaving only the issue of damages to be resolved. Judgment against MJC in the underlying case is at this point imminent, not speculative.

---

[7] MJC's Answer to the FAC in the underlying case generally denies all of the substantive allegations in the FAC, including the allegations that MJC was Ortiz's actual or statutory employer and therefore vicariously liable for Ortiz's negligence. MJC's Answer to FAC ¶¶ 26–28, 47–50, ECF No. 69. Aside from answering the pleading, however, MJC has taken no action to defend itself in the underlying case.

[8] As an aside, the court notes that a truck driver may have more than one statutory employer under the applicable federal motor carrier regulations, and "the liability of one employer does not insulate another employer from liability." *Morales v. OK Trans, Inc.*, No. 2:19-CV-00094, 2024 WL 1348405, at *4 (S.D. Tex. Mar. 29, 2024) (citations omitted).

In sum, the court finds that the intervenor-plaintiffs are entitled to summary judgment in the form of the declarations sought in the Complaint in Intervention, as supplemented by their Reply in support of their Memorandum of Law Regarding Their Theory of Coverage: that USIC's MCS-90 endorsement governs its obligation to satisfy any unsatisfied final judgment entered against MJC in the underlying case; that USIC may not rely on any policy condition, provision, stipulation, limitation, vehicle deletion endorsement, or premium refund to avoid an MCS-90 obligation to the intervenor-plaintiffs; and that USIC's reimbursement rights against MJC are preserved. (*See* Doc. No. 36 at 13.) Implicit in this ruling is the court's conclusion as a legal matter that MJC's ownership of the Subject Vehicle is not determinative of either MCJ's liability or USIC's obligations under the MCS-90 endorsement.

## IV. CONCLUSION

For the reasons set forth herein, the court will enter a default judgment against MJC and the judicial declarations sought by USIC—essentially, that it has no contractual duty under the Policy to defend or indemnify MJC in the underlying case. The court will also *sua sponte* grant summary judgment for the intervenor-plaintiffs and enter the judicial declarations they seek—essentially, that the MCS-90 endorsement governs USIC's obligations with respect to any unsatisfied final judgment entered against MJC in the underlying case.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge